ORIGINAL

STARN • O'TOOLE • MARCUS & FISHER
A Law Corporation
TERENCE J. O'TOOLE #1209
MICHELLE KIM          #7605
Pacific Guardian Center, Mauka Twr.
737 Bishop Street, Suite 1740
Honolulu, HI 96813
Telephone: (808) 537-6100
Facsimile: (808) 537-5434
totoole@starnlaw.com
mkim@starnlaw.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 2 0 2006

at ____ o'clock and ____ min ___ M
SUE BEITIA, CLERK

JAMES A. WAGNER     #1493
NEIL J. VERBRUGGE   #7478
WAGNER CHOI & EVERS
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
jwagner@wcelaw.com
nverbrugge@wcelaw.com

Attorneys for Defendant/Counterclaim Plaintiff
LLAMA CAPITAL MORTGAGE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | ) CIVIL NO. CV03-00518 DAE (KSC) |
| | ) |
| NIMITZ PARTNERS, formerly | ) BK. NOS. 00-03501 |
| known as FAITH PARTNERS, a | )       00-03502 |
| Hawaii general partnership, | )       00-03503 |
| Tax Identification No. | )       00-03504 |
| 99-018491, et al., | ) |
| | ) (Chapter 11) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| NIMITZ PARTNERS, formerly | ) |

54129v1

known as FAITH PARTNERS, a                )    ADV. PRO. NO. 03-90032
Hawaii general partnership, Tax           )
Identification No. 99-018491,             )    STIPULATED FINDINGS OF FACT
                                          )    AND CONCLUSIONS OF LAW
              Plaintiff,                  )    AND ORDER OF FORECLOSURE
                                          )
      v.                                  )    Trial Date: March 7, 2006
                                          )
LLAMA CAPITAL MORTGAGE                    )
COMPANY, a Massachusetts limited          )
partnership, and DOES 1-5, inclusive,     )
                                          )
              Defendants.                 )
_____ )
                                          )
  LLAMA CAPITAL MORTGAGE                   )
COMPANY, a Massachusetts limited          )
partnership,                              )
                                          )
              Counterclaim Plaintiff,     )
                                          )
      v.                                  )
                                          )
NIMITZ PARTNERS, formerly                 )
known as FAITH PARTNERS, a                )
Hawaii general partnership, Tax           )
Identification No. 99-018491, KXE         )
LLC, a Hawaii Limited Liability           )
Company, FIRST HAWAIIAN BANK,             )
120 HOTEL CORPORATION, a                  )
Hawaii corporation, AIRPORT INN           )
PARTNERS, a Hawaii limited                )
partnership, ELBE COMPANY, an             )
Illinois corporation, DAVID G.            )
ELMORE, Defendants JOHN DOES 1-           )
50, JANE DOES 1-50, DOE                   )
PARTNERSHIPS 1-50, DOE                    )
CORPORATIONS 1-50, DOE                    )
ENTITIES 1-50, and DOE                    )

GOVERNMENTAL UNITS 1-50,        )
inclusive,                                        )
                                                       )
            Counterclaim Defendants.   )
                                                       )
_____ )

## STIPULATED FINDINGS OF FACT AND
## CONCLUSIONS OF LAW AND ORDER OF FORECLOSURE

NIMITZ PARTNERS ("Nimitz") and LLAMA CAPITAL MORTGAGE

COMPANY ("Llama") hereby AGREE AND STIPULATE to the Findings of Fact

and Conclusions of Law and Order of Foreclosure set forth below.

Nimitz and Llama hereby FURTHER AGREE AND STIPULATE that

the Court, upon its review and in the exercise of its judgment and discretion, enter the

Final Decree of Foreclosure included herein.

## FINDINGS OF FACT

1.    Llama is a Massachusetts limited partnership.

2.    Nimitz is a Hawaii limited liability company.

3.    On March 31, 1999, by assignment, Llama acquired the lender's

interest to an October 27, 1988 Term Loan Agreement, as amended, between Nimitz,

as Borrower, and The Sumitomo Bank, Ltd. ("Sumitomo"), as Lender. The loan

agreement was subsequently amended by an Amendment Agreement dated December

14, 1989 and a Second Amendment and Forbearance Agreement dated December 11, 1996 (collectively, the "Loan Agreement").

4.     The Loan Agreement was evidenced by a November 10 1988, Promissory Note (the "Note") in the principal amount of Thirty-Two Million One-Hundred and No/100 Dollars ($32,100,000), and delivered to Sumitomo on or about November 10, 1988.

5.     Nimitz's performance of its obligations under the Note and the Loan Agreement was secured by, among other things, the following:

a.     That certain Real Property Mortgage, Assignment of Rents and Financing Statement dated October 27, 1988, filed as Land Court Document No. 1591264, from Nimitz in favor of Sumitomo, as amended by an Amendment to Real Property Mortgage, Assignment of Rents and Financing Statement Plaza Hotel dated October 27, 1989, filed as Land Court Document No. 1695840, (hereinafter referred to as the "Plaza Mortgage"), which Plaza Mortgage covers real property located on the island of Oahu and identified as Tax Map Key No. 1-1-1-14-74, and other property identified in the Plaza Mortgage;

b.     That certain Security Agreement (Plaza Hotel) dated as of October 27, 1988, by and between Nimitz as "Debtor" and Sumitomo as "Secured Party." Sumitomo's secured interest in Nimitz's personal property and fixtures was

perfected by recording that certain UCC-1 Financing Statement dated November 7, 1988 in the Bureau of Conveyances of the State of Hawaii in Book 22542, Page 673, and as continued by the Financing Statement recorded February 6, 1995, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 95-16811. On December 11, 1996, Nimitz and Sumitomo executed an Amendment to Security Agreement (Plaza Hotel), pursuant to which Nimitz pledged that certain Nimitz CapEx Reserve Account (Account No. 01-710001) and that certain Nimitz CapEx Disbursement Account (Account No. 01-075292) at Central Pacific Bank to Sumitomo as additional collateral. Sumitomo's secured interest in that certain Nimitz CapEx Reserve Account (Account No. 01-710001) and that certain Nimitz CapEx Disbursement Account (Account No. 01-075292) at Central Pacific Bank was perfected by recording that certain UCC-1 Financing Statement dated January 2, 1997 recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 97-000512;

    c.  That certain Real Property Mortgage, Assignment of Rents and Financing Statement dated October 27, 1988 filed as Land Court Document No. 1591265, from Nimitz in favor of Sumitomo, as amended by Amendment to Real Property Mortgage, Assignment of Rents and Financing Statement Holiday Inn dated October 27, 1989, filed as Land Court Document No. 1696009 (hereinafter referred to as the "Holiday Mortgage") which Holiday Mortgage covers real property located

on the island of Oahu and identified as Tax Map Key No. 1-1-1-15-2, and other property identified in the Holiday Mortgage;

        d.     That certain Security Agreement (Holiday Inn) dated as of October 27, 1988, by and between Nimitz as "Debtor" and Sumitomo as "Secured Party." Sumitomo's secured interest in Nimitz's personal property and fixtures was perfected by recording that certain UCC-1 Financing Statement dated November 7, 1988 in the Bureau of Conveyances of the State of Hawaii in Book 22542, Page 682, and as continued by the Financing Statement dated February 6, 1995, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 95-16812.

        6.     The Plaza Mortgage and the Holiday Mortgage are hereinafter collectively referred to as the "Mortgages" and the property secured thereby is referred to as "Real Property". The Security Agreement (Plaza Hotel), as amended, and the Security Agreement (Holiday Inn) are hereinafter collectively referred to as the "Security Agreements" and the property secured thereby is referred to as "Personal Property". The Real Property and Personal Property described in the Mortgages and Security Agreements is hereinafter referred to collectively as the "Property."

        7.     Llama acquired Sumitomo's interest to the Loan Agreement by the following:

    a.    The Plaza Mortgage was assigned by Sumitomo to Llama pursuant to that certain Assignment of Mortgage dated March 31, 1999, and which assignment was filed as Land Court Document No. 2532901 on April 1, 1999.

    b.    The Security Agreement (Plaza Hotel) and Amendment to Security Agreement (Plaza Hotel) was assigned to Llama pursuant to the General Assignment of Loan Documents dated March 31, 1999, by and between Sumitomo, as Assignor, and Llama, as Assignee, and which assignment of Security Agreement (Plaza Hotel) was recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 99-05107 and Document No. 99-051079, and which assignment of Amendment to Security Agreement (Plaza Hotel) was recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 99-051076.

    c.    The Holiday Mortgage was assigned by Sumitomo to Llama by that certain Assignment of Mortgage (Honolulu Airport Hotel), dated March 31, 1999, and which assignment was filed as Land Court Document No. 2532902 on April 1, 1999.

    d.    The Security Agreement (Holiday Inn) was assigned to Llama pursuant to the General Assignment of Loan Documents dated March 31, 1999, by and between Sumitomo, as Assignor, and Llama, as Assignee, which assignment of Security Agreement (Holiday Inn) was recorded in the Bureau of

Conveyances of the State of Hawaii as Document No. 99-051078 and as Document No. 99-051080.

       8.     Llama is the holder of the Mortgages and Security Agreements and is entitled to exercise all rights and remedies provided thereunder, including, but not limited to, the foreclosure of the Property.

       9.     One June 25, 1999, Llama commenced foreclosure proceedings against Nimitz in Hawaii State court. Nimitz counterclaimed.

      10.     In or about February 2000, Llama and Nimitz entered into that certain Restructuring Agreement (the "Restructuring Agreement") to resolve their disputes. Paragraph 6 of the Restructuring Agreement required Nimitz to file a case under Chapter 11 of the United States Bankruptcy Code. Nimitz and its affiliates commenced their Chapter 11 bankruptcy case on October 6, 2000, by filing their petitions for relief in the United States Bankruptcy Court for the District of Hawaii (the "Bankruptcy Court"), Case Nos. BK 00-3501, 00-3502, 00-3503, and 00-3504 (collectively, the "Bankruptcy Cases"). On October 26, 2000, Nimitz and its affiliates filed their reorganization plan (the "Plan"), and the Bankruptcy Court confirmed the Plan on December 6, 2000. The Bankruptcy Cases were closed on June 28, 2001.

      11.     Prior to the filing of the Bankruptcy Cases, Nimitz and its affiliate, Grace Business Development Corporation, entered into a Management Agreement

(the "Holiday Inn Management Agreement") with Town Park Hotel Corporation ("Town Park") for the Hotels. The Holiday Inn Management Agreement became effective September 15, 2000.

12.     Also prior to the filing of the Bankruptcy Cases, Nimitz entered into a loan agreement (the "Bass Loan Agreement") with Bass Hotel & Resorts, Inc., an affiliate of Town Park, to finance, in part, the renovation of the Hotels as provided in the Plan and the Restructuring Agreement. The Bass Loan Agreement is dated September 1, 2000.

13.     On or about September 15, 2000, Nimitz, Llama, Town Park, Bass and others entered into an Intercreditor Agreement. The Holiday Inn Management Agreement, the Bass Loan Agreement, and the Intercreditor Agreement are hereinafter referred to as the "Holiday Inn Agreements."

14.     The Plan, Restructuring Agreement, and Holiday Inn Agreements contemplated that Nimitz would renovate the Honolulu Airport Hotel so that it could meet the standards required to have the Hotel become a core brand Holiday Inn Hotel. The Holiday Inn Management Agreement provided that Nimitz was to complete Phase I of the renovations on or before May 31, 2001, and was to complete Phase II of the renovations on or before December 31, 2001. Phase I of the renovations was

completed during 2001. Phase II of the renovations was not completed and has never been completed.

15.    By letter dated March 3, 2003, Llama gave Nimitz notice of default under the Restructuring Agreement and the Plan based on a failure to complete the renovations. On March 13, 2003, Llama issued a Mortgage Statement to Nimitz demanding payment of the full amount of Llama's Allowed Claim under the Plan, plus interest, in the total amount (at that time) of $44,886,150.23.

16.    Nimitz refused to pay the amount demanded.

17.    Llama subsequently moved to reopen Nimitz's Bankruptcy Cases and filed a motion to sell the Hotels (the "Sale Motion"). The Bankruptcy Cases were re-opened, and the Bankruptcy Court set the Sale Motion for an evidentiary hearing.

18.    On June 30, 2003, Nimitz initiated Adversary Proceeding No. 03-90032 (the "Adversary Proceeding") by filing its Complaint for Breach of Contract and Intentional Interference with Economic Relations (the "Complaint") in the Bankruptcy Court. Nimitz filed an Amended Complaint on July 1, 2004.

19.    On August 22, 2003, Llama filed its Answer to Nimitz's Complaint. On September 8, 2003, Llama filed its amended Answer and also filed a Counterclaim for Breach of Contract and Foreclosure (the "Counterclaim").

20. Nimitz filed its Answer to the Amended Counterclaim on October 7, 2003.

21. On November 14, 2003, the United States District Court for the District of Hawaii (the "District Court") withdrew the reference for both the Adversary Proceeding and the Sale Motion.

22. On April 16, 2004, Llama filed its Second Amended Counterclaim. Nimitz answered Llama's Second Amended Counterclaim on April 28, 2004.

23. On August 18, 2004 Nimitz filed an Amended Complaint. Llama answered Nimitz's Amended Complaint on September 1, 2004.

24. On August 19, 2004, Llama filed a Third Amended Counterclaim. Nimitz answered Llama's Third Amended Counterclaim on September 30, 2004.

25. Contrary to the terms of the Note, the Mortgages, the Security Agreements, the Restructuring Agreement and the Plan (the "Loan Documents"), Nimitz has failed to make payments thereunder, and accordingly, is in default. By reason of such default, the entire amount of the obligation presently unpaid is now due and payable. As of March 13, 2003, there was due and owing from Nimitz to Llama under the Note the following:

a.    Principal            $    30,005,414.37

| | b. | Accrued Interest | $ | 14,880,735.86 |
|---|---|---|---|---|
| | | Total | $ | 44,886,150.23 |

26.     The aforesaid total sums, together with interest, attorneys' fees, costs, expenses, late charges, protective advances, property inspection fees and such other and further amounts and charges as may be proper and allowed, until the closing of the sale herein authorized, is a valid first priority perfected security interest and/or valid first lien on the Property.

27.     On or about October 13, 2004, the Parties entered into a Settlement Agreement and Mutual Release (October Agreement), however, Nimitz was unable to obtain certain approvals or to achieve a sale closing by the date required by the October Agreement, and as a result, the October Agreement lapsed and is of no further force and effect. Nimitz's inability to perform under the October Agreement was not caused by any act or failure to act on the part of Llama.

28.     On September 7, 2005, the Parties entered into a second Settlement Agreement with Mutual Releases (the "Settlement Agreement"), pursuant to which the Parties agreed that in the event a Refinance Payment or a Sale Closing as defined in the Settlement Agreement had not occurred on or before December 31, 2005, that this Stipulated Findings of Fact and Conclusions of Law and Order of Foreclosure would be entered by the Court and the sale of the Property would proceed as provided for herein.

54129v1                                    -12-

29.     Pursuant to the Settlement Agreement, Nimitz's Amended Complaint and Defenses have been dismissed with prejudice.

30.     To the extent one or more of the foregoing findings of fact constitute conclusions of law, they shall be so construed.

## CONCLUSIONS OF LAW

Pursuant to the foregoing Findings of Fact, the Court concludes:

31.     There are no genuine issues as to any material fact herein and Llama is entitled to judgment as a matter of law on its foreclosure claim with respect to the Property.

32.     As of March 13, 2003, there is due and owing and unpaid to Llama from Nimitz principal, accrued interest and accrued charges in the sum of $44,886,150.23, together with interest for each and every day thereafter, together with interest and other charges pursuant to the terms of the Loan Documents, including interest, costs, expenses, protective advances, property inspection fees, late fees, other charges, and attorneys' fees and costs, as the Court shall determine to be lawfully chargeable under the provisions of the Loan Documents.

33.     The Loan Documents constitute a valid perfected first priority security interest and/or valid first lien upon the Property.

34.     Llama is entitled to have the Loan Documents foreclosed upon the Property and to have the Property sold in a manner prescribed by law.

35.     This Court has jurisdiction over this action pursuant to Chapter 667 of the Hawaii Revised Statutes.

36.     This Court expressly directs that final judgment shall be entered as to Llama's foreclosure claim with respect to the Property pursuant to Rule 54(b) of the Hawaii Rules of Civil Procedure as there is no just reason for delay inasmuch as Nimitz does not oppose the motion and an early disposition of the Property will best protect the interests of Nimitz.

37.     Judgment shall be entered herein in favor of Llama on Llama's foreclosure claim with respect to the Property.

38.     To the extent one or more of the foregoing conclusions of law constitute findings of fact, they shall be so construed.

## DECREE OF FORECLOSURE

1.     Nimitz is in default under the Note, the Mortgages, Security Agreements, the Restructuring Agreement and the Plan.  There is due and owing and unpaid to Llama from Nimitz the amount of $44,826,150.23, as of March 13, 2003, plus reasonable attorneys' fees and costs, together with such other and further amounts as the Court shall subsequently determine to be lawfully chargeable under

the provisions of the Note and Mortgages held by Llama, including interest, costs, expenses, other charges, and attorneys' fees, all sums to be paid at the date of closing of this sale hereafter authorized. All of the aforementioned sums due from Nimitz are a valid first lien upon the Property herein described.

2.      The Mortgages and Security Agreements currently held by Llama shall be and are hereby foreclosed as prayed, and the Property as herein described shall be sold at public auction as authorized by law and under the provisions of the Mortgages and Security Agreements. The sale shall not be final until approved and confirmed by the Court.

3.      The Commissioner as appointed herein by the Court shall:

a.      Make, execute, and deliver to the order of the purchaser or purchasers, such conveyance of the Property as may be appropriate in the premises and that such purchaser or purchasers or their nominee or nominees be let into possession of the Property on the production of said instrument.

b.      Manage the Property during the pendency of the foreclosure by, among other things, continuing the current Hotel management agreement with Outrigger Hotel and all actions necessary for the care and maintenance of the Property.

     c.    Make his or her report on such sale to the Court, and that the Commissioner, after payment of all of his or her necessary costs and expenses of such sale, including the Commissioner's fee and make distribution of the proceeds thereof ("Proceeds") in the following order of priority:

     1)    After payment of Commissioner's fees and expenses, Llama shall receive the first $19,000,000.00 (nineteen million U.S. dollars) from the Proceeds;

     2)    If there are remaining Proceeds, Nimitz shall receive $2,000,000 (two million U.S. dollars);

     3)    If there are remaining Proceeds, Llama shall receive $250,000 (two-hundred-fifty thousand U.S. dollars).

     4)    If there are remaining Proceeds, Nimitz and Llama shall each receive fifty percent (50%) of such Proceeds.

     4.    JOSEPH TOY    whose address is 745 Fort Street Mall, Ste. 2124 Honolulu, HI 96813 and whose telephone number is 550-8955, is hereby appointed Commissioner by this Court and as such Commissioner shall henceforth hold equitable and legal title to the Property, and is hereby authorized and directed to take possession of the Property, to rent the Property until the foreclosure, if appropriate, and to sell the Property to the highest bidder at public Commissioner's

sale by auction after notice of such sale first being given by the Commissioner by publication in the classified section of a daily newspaper of general circulation printed and published in the County of Honolulu, State of Hawaii, as may be directed by the court from time to time. The notice shall give the date, time and place of such sale and an intelligible description of the Property to be sold at such sale, and shall disclose all terms of sale herein mentioned. The Property shall be advertised once a week for three (3) consecutive weeks, with the auction to take place no sooner than fourteen (14) days after the appearance of the third advertisement. No bond shall be required of the Commissioner. The Commissioner shall be awarded a reasonable fee as Commissioner to be subsequently determined by the court. The Commissioner's fees and costs shall be deemed to be secured by Llama's lien on the Property and shall constitute a Closing Cost. In the event the Commissioner refuses or becomes unable to act as Commissioner, the Court shall appoint another without further notice of hearing.

5.    A further hearing shall be held herein to consider confirmation of each foreclosure sale. At the hearing, the Court will also allow reopening of the auction by accepting higher bids, the first of which must be at least one hundred five percent (105%) of the highest bid at the Commissioner's sale. Anyone may reopen the auction by bidding, including all parties to this action and any other interested

person, whether or not any such party or interested person has bid, or could have bid, at the Commissioner's sale.

6.     Nimitz, and all persons claiming by, through or under it, are forever barred and foreclosed of and from all right, title and interest and claim at law and in equity in and to the Property and every part thereof.

7.     Llama is hereby authorized to become a purchaser at the foreclosure sale and to credit bid its judgment herein without the necessity of making any cash deposit. If Llama credit bids and purchases the Property for an amount in excess of the Commissioner's fees and $19 million, Llama shall pay to Nimitz the amount Nimitz otherwise would have received pursuant to paragraph 3(c) herein had there been a cash purchaser for the Property in the amount of the credit bid.

8.     With the exception of Paragraph 7 above, the successful bidder at the sale is to make a down payment to the Commissioner in an amount not less than ten percent (10%) of the highest successful bid price at such sale, such payment to be made in cash or by way of cashier's check. The balance of the purchase price shall be paid to Commissioner upon approval and confirmation of the sale by the Court in tender of the document transferring title, such payment to be made in cash or by way of cashier's check, provided that Llama may satisfy the balance of the purchase price after payment in full of all prior liens, taxes and fees (as determined by this Court),

54129v1                              -18-

by way of offset up to the amount of its secured debt, as appropriate in the event it is the successful purchase of the foreclosure sale.

9.     Cost of conveyance, including conveyance tax, the cost of any escrow, securing possession of the Property and recording of such conveyance and any orders of this court, shall be at the expense of such purchaser.

10.     This Decree shall be entered as a final judgment pursuant to Rule 54 of the Federal Rules of Civil Procedure as there is no just reason for delay.

JAN  4  2006

DATED: Honolulu, Hawaii, _____.


_____

STARN · O'TOOLE · MARCUS & FISHER
Terence J. O'Toole
Michelle Kim
WAGNER CHOI & EVERS
James A. Wagner
Neil J. Verbrugge
Attorneys for Defendant/Counterclaim Plaintiff
LLAMA CAPITAL MORTGAGE COMPANY

//
//
//
//
//
//
//

54129v1

_____
IRELL & MANELLA LLP
Howard J. Steinberg
Michael H. Strub, Jr.

Attorneys for Defendants
NIMITZ PARTNERS, KXE, LLC, 120 HOTEL
CORPORATION, AIRPORT INN PARTNERS,
ELBE COMPANY, and DAVID G. ELMORE

APPROVED AND SO ORDERED:

_____
JUDGE OF THE ABOVE-ENTITLED COURT

Nimitz Partners v. Llama Capital Mortgage Co., Civ. No. 03-00518 DAE (KSC); Stipulated Findings of Fact and
Conclusions of Law and Order of Foreclosure